J-S68021-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| GIOVANNI GONZALEZ, | : | |
| | : | |
| Appellant | : | No. 1971 EDA 2014 |

Appeal from the Judgment of Sentence June 11, 2014,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0006503-2013

BEFORE: BENDER, P.J.E., DONOHUE and MUNDY, JJ.

MEMORANDUM BY DONOHUE, J.:          **FILED NOVEMBER 16, 2015**

Appellant, Giovanni Gonzalez ("Gonzalez"), appeals from the judgment of sentence entered on June 11, 2014 by the Court of Common Pleas of Philadelphia County, Criminal Division, following his convictions of burglary, attempted burglary, loitering and prowling at night time, and criminal trespass.[1] We affirm in part and reverse in part.

The trial court summarized the relevant factual history of this case as follows:

> Lela Dowdy [("Dowdy")] testified that on April 2, 2013, at about 2:00 a.m. at 1807 South 4th Street, in the City of Philadelphia, she was woken up by her brother who stated that he heard noises while in their bedroom. (N.T. 4/4/14 pp. 26, 27). [Dowdy] stated that she is [twelve] years old and shares the bedroom with her [ten-year-old] brother. ([*Id.* at] 8, 14). [Dowdy] saw a light[-]skinned man with a

---

[1] 18 Pa.C.S.A. §§ 3502(a)(1), 901(a), 5506, 3503(a)(1)(i).

black hat and black clothing enter her window[,] which was partially cracked open. ([*Id.* at] 8-11). She described the black hat as one "that goes up to, like, the forehead, down your forehead." ([*Id.* at] 10). She described his black clothing as a black sweater and black pants. ([*Id.* at] 11). She stated that "a man broke into my window." ([*Id.* at] 8). The man lifted his arm, tilted his body, and lifted his leg, but did not move any part of his body into the bedroom. ([*Id.* at] 9, 10). She testified that the man was at her window for about three [] minutes and that there was a nightlight in her room. ([*Id.* at] 11). [Dowdy] made noises and the man retreated from the window. ([*Id.* at]. 9). [Dowdy] then went into her mother's room to apprise her of what had happened. *Id.* Ms. Melony Merritt, [Dowdy]'s mother, called the police. *Id.*

[Dowdy] testified that police officers arrived at her home within five [] minutes. ([*Id.* at] 13). She stated that she identified [Gonzalez] when officers brought him to her home. ([*Id.* at] 12-13). [Dowdy] stated she had previously seen [Gonzalez] in the neighborhood, at the store across the street, and that he lived next door [to] her. *Id.* Her home is part of a set of row homes. ([*Id.* at] 14, 15, 22). [Dowdy] explained that the houses are connected and that below her window is the first floor roof. ([*Id.* at] 13-15).

Trial Court Opinion, 3/2/15, at 2-3 (footnotes omitted).

On April 2, 2013, Gonzalez was arrested after being positively identified by Dowdy as the man attempting to enter her bedroom window in the middle of the night. The trial court further provided the following procedural history for this case:

On April 4, 2014, a [nonjury] trial was held at which [Gonzalez] was found guilty of the aforementioned [crimes]. A pre-sentence

investigation was ordered. On June 11, 2014, this [c]ourt sentenced [Gonzalez] to nine [] to twenty-three [] months [of imprisonment] with credit for time served with immediate parole to house arrest with electronic monitoring followed by two [] years [of] reporting probation. (N.T. Sentencing 6/11/14 pp. 15, 17, 20). On July 8, 2014, [Gonzalez] filed a timely Notice of Appeal. This [c]ourt ordered a Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) on August 1, 2014. A statement of intent to file an ***Anders***/***McClendon*** brief was filed on August 20, 2014. In that statement, appellate counsel averred that the entire record had been reviewed and counsel had determined that there were no meritorious, non-frivolous issues to raise on appeal. Thereafter, this [c]ourt filed a Pa.R.A.P. 1925(a) Opinion on September 24, 2014.

On January 14, 2015, after consideration of [Gonzalez]'s Petition To Vacate Briefing Schedule And To Remand Record To Trial Court, the Superior Court vacated the briefing schedule and permitted [Gonzalez] to file a Supplemental Statement of Errors Complained of on Appeal. On the same day, the Superior Court ordered this [c]ourt to prepare a Supplemental Opinion, pursuant to Pa.R.A.P. 1925(a), within thirty [] days of receipt of [Gonzalez]'s Supplemental Rule 1925(b) Statement. On February 2, 2015, a Supplemental Statement of Errors Complained of on Appeal was filed by [Gonzalez].

***Id.*** at 1-2 (footnotes omitted).

On appeal, Gonzalez raises the following issues for our review:

1. Was not the evidence insufficient to convict appellant of burglary or its lesser[-]included offense, attempted burglary, where there was no evidence of entry or attempted entry into the property?

> 2. Did not the lower court err as a matter of law in convicting [Gonzalez] of both attempted burglary and burglary for the same incident?

Gonzalez's Brief at 3.

For his first issue on appeal, Gonzalez challenges the sufficiency of the evidence to support his burglary and attempted burglary convictions. *See id.* at 11-18. Because Gonzalez failed to raise a challenge to the sufficiency of the evidence to support his attempted burglary conviction in his Rule 1925(b) statement, we must conclude that it is waived.

In ***Commonwealth v. Hill***, 16 A.3d 484 (Pa. 2011), our Supreme Court stated the following with respect to waiver under Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure:

> Our jurisprudence is clear and well-settled, and firmly establishes that: Rule 1925(b) sets out a simple bright-line rule, which obligates an appellant to file and serve a Rule 1925(b) statement, when so ordered; any issues not raised in a Rule 1925(b) statement will be deemed waived; the courts lack the authority to countenance deviations from the Rule's terms; the Rule's provisions are not subject to ad hoc exceptions or selective enforcement; appellants and their counsel are responsible for complying with the Rule's requirements; Rule 1925 violations may be raised by the appellate court sua sponte, and the Rule applies notwithstanding an appellee's request not to enforce it; and, if Rule 1925 is not clear as to what is required of an appellant, on-the-record actions taken by the appellant aimed at compliance may satisfy the Rule.

***Id.*** at 494 (footnote omitted).

Here, Gonzalez did not raise a challenge to the sufficiency of the evidence with respect to his attempted burglary conviction in his Rule 1925(b) statement. **See generally** Rule 1925(b) Statement, 2/2/15. Rather, Gonzalez's Rule 1925(b) statement exclusively challenges the sufficiency of the evidence for his burglary conviction. **See id.** ¶ 6. Accordingly, Gonzalez has waived his challenge to the sufficiency of the evidence of his attempted burglary conviction.

Because Gonzalez has properly preserved his challenge to the sufficiency of the evidence of his burglary conviction, we now turn our attention to the merits of that issue. Gonzalez argues that the evidence was insufficient to sustain his burglary conviction because the Commonwealth failed to prove the entry element of that crime, namely that any portion of his body entered Dowdy's bedroom. **See** Gonzalez's Brief at 11-15. We utilize the following standard of review when presented with a challenge to the sufficiency of the evidence:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." **Commonwealth v. Widmer**, [] 744 A.2d 745, 751 ([Pa.] 2000). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." **Commonwealth v. Brewer**, 876 A.2d 1029, 1032 (Pa. Super. 2005). Nevertheless, "the Commonwealth need not

establish guilt to a mathematical certainty." ***Id.***; ***see also Commonwealth v. Aguado***, 760 A.2d 1181, 1185 (Pa. Super. 2000) ("[T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence"). Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. ***See Commonwealth v. DiStefano***, 782 A.2d 574, 582 (Pa. Super. 2001).

\* \* \*

Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld. ***See Brewer***, 876 A.2d at 1032.

***Commonwealth v. Franklin***, 69 A.3d 719, 722-23 (Pa. Super. 2013) (quoting ***Commonwealth v. Pettyjohn***, 64 A.3d 1072, 1074-75 (Pa. Super. 2013)).

Gonzalez was convicted of burglary as a first-degree felony under section 3502(a)(1) of the Crimes Code. Section 3502(a)(1) provides as follows:

**(a) Offense defined.--**A person commits the offense of burglary if, with the intent to commit a crime therein, the person:

(1) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations

- 6 -

> in which at the time of the offense any person is present[.]

18 Pa.C.S.A. § 3502(a)(1). This Court has held that "proof of entry does not require proof of a breaking-in; it is sufficient to prove that any part of the body of the intruder entered the premises." ***Commonwealth v. Gordon***, 477 A.2d 1342, 1348 (Pa. Super. 1984).

Dowdy testified on direct examination regarding Gonzalez's actions on the night in question as follows:

> Q. Did something happen when you were in your bed that brings you into court today?
>
> A. Yes.
>
> Q. What happened?
>
> A. A man broke into my window.
>
> Q. Okay. Well, can you tell Her Honor what exactly happened?
>
> A. I was sleeping. My brother was awake because he heard noises and he woke me up. And I saw the man that was trying to come in my room, but I kind of scared him by making noises and he ran out the door -- the window. So I went in my mom's room and told her and she said that -- well, she called the cops.
>
> Q. Okay, can you describe -- where that man was when you saw him?
>
> A. He was right where the window -- like, he was beginning to come in the window, but he was --
>
> Q. So, the window was open?

A. No -- yeah, it was cracked.

Q. It was cracked. Okay. And you said he was beginning to come inside the window. What -- where exactly was -- exactly how was this person's body at the window?

A. Like kind of curved. Like that.

Q. Okay.

[Commonwealth:] So the witness was lifting her right arm?

[Defense Counsel:] For the record, she turned her body slightly to the side.

Q. What made you -- what did you see that made you think he was coming through the window?

A. His leg and up started like --

Q. I'm sorry. The last part -- I didn't hear.

A. I said his leg was up.

Q. His leg was up. And where was his leg?

A. It was up. I don't know.

Q. Was it inside or outside?

A. It was outside.

Q. Okay. And you said you made a noise. Did you -- did he come in the room at all?

A. No.

Q. All right. Did any part of his body come into the room?

A. No.

N.T., 4/4/14, at 8-10.

We conclude that the Commonwealth failed to present evidence that Gonzalez entered Dowdy's bedroom. Dowdy's testimony reflects that although Gonzalez appeared as though he was about to enter her bedroom, Dowdy specifically stated that no part of Gonzalez's body entered her bedroom. *Id.* Based on our review of the certified record, there is no other evidence indicating that Gonzalez ever entered Dowdy's bedroom. Accordingly, the evidence was insufficient to sustain Gonzalez's burglary conviction.

The trial court and the Commonwealth argue that Dowdy's statement on direct examination that Gonzalez "broke into my window" was sufficient evidence to sustain Gonzalez's burglary conviction. *See* Trial Court Opinion, 3/2/15, at 11; Commonwealth's Brief at 8. We find this argument unavailing. While that statement alone may have been sufficient proof that Gonzalez entered Ms. Dowdy's bedroom, over the next several pages of testimony, Dowdy went on to qualify what she meant when she said Gonzalez "broke into my window." *See* N.T., 4/4/14, at 8-10. In so doing, Dowdy testified that Gonzalez appeared as though he was about to enter her bedroom, but that no part of his body ever did. *Id.*

The trial court and the Commonwealth further argue that there is circumstantial evidence that Gonzalez entered Dowdy's bedroom. *See* Trial

Court Opinion, 3/2/15, at 11-12; Commonwealth's Brief at 8-9. The trial court and the Commonwealth assert that because Dowdy, in her police statement, indicated that she observed Gonzalez opening her window, it was reasonable to infer that in the course of opening the window, some portion of Gonzalez's hand or arm entered Dowdy's bedroom. *See id.* In so arguing, the trial court and the Commonwealth rely on *Commonwealth v. Myers*, 297 A.2d 151 (Pa. Super. 1972).

We conclude, however, that *Myers* is inapplicable to this case. In *Myers*, police discovered the defendant standing in front of a door to a gas station and the door to the station had been splintered around the lock assembly, the window closest to the doorknob had been broken, and twenty minutes before, police had inspected that same gas station and the door was not damaged. *Id.* at 152. The trial court sustained the defendant's demurrer to the evidence on a charge of burglary finding that the evidence was insufficient to establish the element of entry necessary for a burglary conviction. *Id.* at 152. This Court reversed, finding:

> It is true that in this case there is no direct evidence of an entry. But the condition of the door suggests that an entry did in fact occur. The frame was damaged as if someone had attempted to batter in the door. Since the window closest to the doorknob had been broken as well, it would not be unreasonable to assume that the defendant had reached his arm inside to try to unlock the door before resorting to breaking it down. And the passing of an arm through a window is enough to

> satisfy the entry requirement, for the entry of any part of the body is sufficient to constitute a burglary.

*Id.*

Here, unlike ***Myers***, there is no evidence that Gonzalez broke Dowdy's window. Additionally, although the certified record does reflect that Dowdy's window was open when Gonzalez was attempting to enter her bedroom, there is no evidence in the certified record on appeal that Gonzalez opened Dowdy's window.[2] Dowdy testified that she had left the window "cracked" prior to the incident and Officer Phillip Muscarnero ("Officer Muscarnero") stated that he "observed the window open." ***See*** N.T., 4/4/14, at 17-18, 36. Neither Dowdy nor Officer Muscarnero testified that they observed Gonzalez opening Dowdy's bedroom window. Moreover, even if there was evidence of record that Gonzalez opened Dowdy's window, that does not indicate that a portion of Gonzalez's body entered Dowdy's bedroom. It is certainly possible for a person to open an already cracked window from that window's exterior.

---

[2] The trial court and the Commonwealth assert that there is evidence in the record that Gonzalez opened Dowdy's bedroom window because Dowdy indicated that he had done so in her police statement. ***See*** Trial Court Opinion, 3/2/15, at 11-12; Commonwealth's Brief at 9 n.3. Although defense counsel impeached Dowdy with portions of her police statement on cross-examination, that statement is not part of the certified record on appeal, as defense counsel never moved for its introduction into evidence. ***See*** N.T., 4/14/15, at 25-26. "It is black letter law in this jurisdiction that an appellate court cannot consider anything which is not part of the record in the case." ***Commonwealth v. Martz***, 926 A.2d 514, 524 (Pa. Super. 2007).

Therefore, based on our review of the certified record, it was not reasonable for the trial court to infer that some portion of Gonzalez's body entered Dowdy's bedroom. Accordingly, we reverse Gonzalez's burglary conviction and remand this matter to the trial court for re-sentencing. Because we are vacating Gonzalez's burglary condition, we need not address his second issue.

Judgment of sentence affirmed in part and reversed in part. Case remanded. Jurisdiction relinquished.

Bender, P.J.E. joins the Memorandum.

Mundy, J. notes her dissent.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/2015